# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6078 | **DATE** | 4/5/2001 |
| **CASE TITLE** | US vs. Robert R. Krilich, Sr. (94 CR 419-1) | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Robert Krilich's §2255 motion to vacate, set aside, or correct his sentence is denied. All other pending motions, if any, are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | number of notices | | | |
| | Notices mailed by judge's staff. | | | | | |
| | Notified counsel by telephone. | | APR 06 2001 | | | |
| ✓ | Docketing to mail notices. | | date docketed | | | 17 |
| ✓ | Mail AO 450 form. | | CM | | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | | |
| | courtroom deputy's initials | | date mailed notice | | | |
| SCT | | | | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

APR 0 6 2001

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | 00 C 6078 |
| vs. | ) | |
| | ) | 94 CR 419-1 |
| ROBERT R. KRILICH, SR., | ) | |
| | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the Court on Robert Krilich, Sr.'s motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, we deny the motion.

## BACKGROUND

In approximately March 1993, Petitioner Robert Krilich, Sr. learned that he was under federal investigation for bribery and other crimes in connection with suspected government corruption in Oakbrook Terrace, Illinois. Krilich retained Jeffrey Steinback, who was concurrently representing his son, Robert Krilich, Jr. ("Rob Krilich"), in an unrelated federal investigation, to represent him. Allegedly in an attempt to obtain a favorable plea bargain for his son, Krilich decided to cooperate in the government's investigation of his and his companies' past activities.

In December 1993, prior to Krilich's substantive cooperation with the investigation, the United States Attorney's Office for the Northern District of Illinois (the "Government") provided Krilich with a standard proffer letter (the "proffer agreement") stating that anything related to the government during a proffer could not and would not be used against Krilich in the Government's case-in-chief or in aggravation of Krilich's sentence. The letter warned, however, that the Government could use the proffer statements for impeachment or in rebuttal if Krilich "should subsequently testify contrary to the substance of the proffer or otherwise present a position inconsistent with the proffer." According to Krilich's § 2255 petition, Steinback advised Krilich that the government could only use his statements at trial if he were to take the stand and testify inconsistently with the statements he provided in proffer interviews or put on a witness who testified directly contrary to those statements. Krilich was allegedly never informed that his cross-examination of the Government's witnesses at trial, or the presentation of circumstantial evidence of his innocence through defense witnesses, could potentially open the door to the introduction of his proffer statements.

Based on his understanding of the proffer agreement, Krilich submitted to a number of interviews in which he provided substantive information about his activities to the United States Attorney's Office, the FBI, and the Internal Revenue Service. In

particular, Krilich admitted that he bribed Oakbrook Terrace Mayor Richard Sarallo in order to obtain favorable commercial zoning, that he effected the bribe through a phony $40,000 hole-in-one contest in which he personally ensured the success of the mayor's son, and that he shifted the cost of the bribe to the National Hole-In-One Association, from whom he had obtained an insurance policy to cover the contest. Krilich also admitted falsifying vendor invoices in order to withdraw, for his own personal use, municipal bond sale proceeds raised to finance Krilich's development projects. Krilich was ultimately unable to come to an agreement with the government regarding a plea in part, he claims, because of his insistence on bartering his cooperation for leniency in the Government's treatment of his son. As a result, Krilich was indicted and proceeded to trial.

Krilich was represented at trial not by Steinback but by two other attorneys, Dennis Berkson and Harry Samuels. Berkson and Samuels were aware of the proffer agreement and the statements Krilich had made pursuant to its execution. In order to avoid opening the door to the introduction of Krilich's proffer statements, Berkson and Samuels advised Krilich not to take the stand, and he agreed, stating on the record that he waived his right to testify. See Tr. at 2356. Berkson and Samuels also avoided eliciting from defense witnesses testimony that they believed directly contradicted the information in the proffer. They did, however, conduct broad cross-examination of the

Government's witnesses, some of whom were friendly to Krilich, on topics covered by the proffer, and elicited circumstantial evidence of Krilich's innocence from defense witnesses on direct examination.

Following the close of Krilich's case, the Government argued that defense counsel had "present[ed] a position inconsistent with the proffer" and sought leave to introduce portions of the proffer in rebuttal. Over defense counsel's objections, the court permitted the Government to introduce in evidence Krilich's proffer statements to the effect that he had staged the hole-in-one contest in order to effect a bribe to the mayor and that he had falsified invoices to obtain municipal bond proceeds for his personal use. Krilich was then convicted of fraud and conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act (RICO) and sentenced to 64 months in federal prison.

Krilich appealed his conviction, arguing *inter alia* that the trial court erred in permitting the Government to introduce evidence of the proffer. Krilich, through appellate counsel Berkson and Samuels, argued first that the waiver clause in the proffer agreement should be limited to evidence presented by the defendant's own witnesses and should exclude evidence obtained by cross-examination. The Court of Appeals disagreed, opining that the defense position "would be an unnatural reading of the language":

Evidence is evidence, whether it comes out on direct or cross-examination. One can "otherwise present" a position through arguments of counsel alone, so it is easy to see how a position can be "presented" by evidence developed on cross-examination and elaborated by counsel. When the prosecution's witnesses are inclined to accommodate the defense, as many were in this case, developing one's position through cross-examination is especially attractive. Krilich, 159 F.3d at 1025.

The court then went on to hold that the trial court's finding of a "genuine inconsistency" between the proffer and the evidence presented, through any means, by the defendant at trial was not clearly erroneous. The court noted that the defense had cross-examined the Government's witnesses in such a way as to suggest that Krilich was not at the ninth hole at the time the mayor's son supposedly hit the winning hole-in-one and that no bribes were required because the city attorney thought the new zoning to be correct. It also found defense counsel's questioning of the defendant's own witnesses to be inconsistent with the proffer in that their testimony implied that it was unlikely that any bribes were ever made.

Krilich also argued on appeal that if the trial judge's ruling was not erroneous, then Krilich's waiver of the plea statement rules was unknowing and involuntary, and thus unenforceable. The court ruled that under Rule 410 of the Federal Rules of Evidence and Rule 11(e)(6) of the Federal Rules of Criminal Procedure, "[a] waiver is voluntary in the absence of coercion and is knowing if made with a full awareness of both the nature of the right being abandoned and the consequences of the decision

to abandon it." Krilich, 159 F.3d at 1026 (citations and quotation marks omitted). Because Krilich had shown neither that his assent was coerced or that he lacked an understanding of the rights he was relinquishing, the court found that the waiver was enforceable under Rules 410 and 11(e)(6).

In the end, the Seventh Circuit affirmed Krilich's conviction and vacated and remanded his sentence. United States v. Krilich, 159 F.3d 1020 (7th Cir. 1998), cert. denied, 120 S. Ct. 42 (1999). On November 1, 2000, this Court (Judge Coar) issued a judgment and commitment order sentencing Krilich to a term of 87 months' imprisonment. Bother Krilich and the Government have appealed this sentence. With those sentencing appeals pending, Krilich has filed this § 2255 petition challenging the validity of his conviction on Fifth and Sixth Amendment grounds. The Government has both answered and moved to dismiss the petition.

## DISCUSSION

### I. Fifth Amendment

Krilich seeks a new trial on the ground that his Fifth Amendment privilege against self-incrimination prior to trial was violated when the trial judge admitted the proffer statements. He contends that the conditional waiver of rights contained in the proffer agreement was invalid in that he did not intentionally, knowingly, and intelligently waive his Fifth Amendment rights. In essence, Krilich argues that both

Steinback and AUSA King led him to believe that his proffer statements could be used against him only if he testified, and could not be introduced if he were to cross-examine government witnesses regarding their veracity or present defense witnesses who would provide circumstantial evidence suggesting his innocence.

The Government asserts that this issue is procedurally defaulted either because Krilich raised it on appeal, or because he failed to raise it despite being able to do so. Krilich responds that he did not, and could not, raise the Fifth Amendment issue on appeal because his argument relies on evidence outside the record. He further contends that the Seventh Circuit's finding that he knowingly and voluntarily waived his Rule 410 and Rule 11(e)(6) rights is not conclusive on the issue of whether the waiver of his Fifth Amendment rights was also knowing and voluntary. For the reasons discussed below, we find this latter argument to be meritless and the issue to be dispositive of Krilich's Fifth Amendment claim.

An issue raised on direct appeal cannot be re-argued on habeas absent changed circumstances of fact or law. <u>Norris v. United States</u>, 687 F.2d 899, 900 (7th Cir. 1982). In his direct appeal to the Seventh Circuit, Krilich argued that the conditional waiver of his statutory right to exclude as evidence at trial pretrial "plea statements" was unenforceable because he did not sufficiently understand the conditions under which such statements could become admissible. Applying the constitutional test for

evaluating the voluntariness of confessions in criminal cases, the court found that Krilich's waiver of these rights was neither coerced nor unknowing. Krilich now argues on habeas that the conditional waiver of his *constitutional* right to exclude as evidence at trial the same pretrial "plea statements" is unenforceable, again arguing that he did not sufficiently understand the conditions under which such statements could become admissible. He contends that this is a separate issue from the one he raised on appeal, since the Seventh Circuit purportedly never conducted a "Fifth Amendment waiver analysis."

There is no question that the rights guaranteed by the Fifth Amendment are broader than those conferred by Rules 410 and 11(e)(6). However, the specific Fifth Amendment right that Krilich alleges was violated in his case – the right to have incriminating pretrial admissions excluded at trial absent a knowing and voluntary waiver – is precisely the same right protected by those statutory provisions. If Krilich's waiver of his right to keep the proffer out of evidence was knowing and voluntary, then it was knowing and voluntary. The source of that right is irrelevant to the waiver analysis.

Krilich argues that we must conduct a separate, independent Fifth Amendment waiver analysis because, he claims, the test for waiver of a constitutional claim is more stringent than the test for waiver of a statutory right. While this may sometimes be

true, see, e.g., Webb v. Keohane, 804 F.2d 413, 414-15 (7th Cir. 1986) (waiver of statutory right need not always be knowing and intelligent), it is not always the case. In fact, in analyzing the validity of Krilich's conditional waiver of his Rule 410 and Rule 11(e)(6) rights, the Seventh Circuit applied nothing less than the test for determining whether a criminal suspect has waived his constitutional right to remain silent. See Krilich, 159 F.3d at 1026 (citing Fifth Amendment waiver cases of Colorado v. Connelly, 479 U.S. 157, 107 S. Ct. 515 (1986), Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135 (1986), and Colorado v. Spring, 479 U.S. 564, 107 S. Ct. 851 (1987)).

Nor does the presumption of waivability of Rules 410 and 11(e)(6) distinguish the rights conferred by those statutes from those arising under the Fifth Amendment, as Krilich suggests. See U.S. v. Mezzanatto, 513 U.S. 196, 115 S. Ct. 797 (1995). In holding that a criminal defendant's rights under Rules 410 and 11(e)(6) were presumably waivable, the Supreme Court in Mezzanatto relied on past decisions in which the Court had presumed that even fundamental constitutional rights, such as the right against self-incrimination, could be waived. 513 U.S. 196, 200-201 (citing, e.g., Peretz v. United States, 501 U.S. 923, 936, 111 S. Ct. 2661, 2669 (1991) and Boykin v. Alabama, 395 U.S. 238, 243, 89 S Ct. 1709, 1712 (1969)). Krilich makes much of the fact that Rule 410 and 11(e)(6) rights are presumed waivable while Fifth

Amendment rights are presumed not to be waived in a given situation. These two propositions do not, however, establish that the analysis of whether waiver has occurred in a particular case varies with the right in question. Krilich is comparing apples and oranges; waivability and waiver-in-fact are separate issues.

We therefore find inadequate support for Krilich's position that "waivers of Rules 410 and 11(e)(6) are accomplished more easily than the Fifth Amendment protections" at issue in this case. At a minimum, we are convinced that the waiver analysis that the Seventh Circuit previously undertook, at Krilich's request, was identical to that he is now asking us to conduct in addressing his § 2255 petition. Krilich may not avoid the procedural bar and take a second bite at the apple merely by restyling his previously-adjudicated complaint as a constitutional claim.

## II. Ineffective assistance of counsel

Krilich also moves to vacate his conviction on the ground that he was denied effective assistance of counsel prior to and during trial. A § 2255 motion must be granted when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255; Fountain v. United States, 211 F.3d 429, 433 (7th Cir. 2000). Ineffective assistance of counsel claims are generally cognizable under § 2255. Id. at 433-34. However, "because counsel is presumed effective, a party bears a heavy burden in making out a winning claim based on ineffective assistance of

counsel." Id. at 434, quoting United States v. Trevino, 60 F.3d 333, 338 (7th Cir. 1995); Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 1052 (1984). In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness and that the deficient performance so prejudiced the petitioner's defense that it deprived her of a fair trial. See Strickland, 466 U.S. at 688-94. In assessing counsel's performance, we "evaluate the conduct from counsel's perspective at the time, and indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional conduct." United States v. Ashimi, 932 F.2d 643, 648 (7th Cir. 1991). If the record supports a finding of substandard performance, we then determine whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." United States v. Starnes, 14 F.3d 1207, 1209-10 (7th Cir. 1994).

## A. Conflict of interest

Krilich argues that he received ineffective assistance of counsel in plea negotiations with the Government because, he claims, attorney Steinback labored under a conflict of interest. Steinback did concurrently represent both Krilich and his son in plea negotiations with the United States Attorney's Office in the Northern District of Illinois. And although the crimes in which the father and son were suspects were

wholly unrelated, there is evidence in the record suggesting that Krilich, with Steinback's assistance, attempted to barter cooperation with the Government in his own case for leniency in his son's. Krilich argues that Steinback's attempt to orchestrate this exchange created an conflict of interest which prevented Krilich from receiving effective legal representation.

The Government argues that the conflict of interest claim is procedurally defaulted because Krilich failed to raise it on direct appeal. As the Seventh Circuit noted in <u>Guinan v. U.S.</u>, 6 F.3d 468, 471 (1993), however, it is typical for a criminal defendant to base an ineffective assistance of counsel claim on evidence outside the trial record. Under these circumstances, it is the defendant's "privilege" to withhold the claim from his direct appeal and pursue it in collateral proceedings. Krilich's conflict of interest claim is clearly based on evidence outside the trial record, most notably the fact that Steinback concurrently represented Krilich's son. Krilich was therefore not required to raise his conflict of interest claim on direct appeal, and we will proceed to address it on the merits.

Criminal defendants are entitled to conflict-free representation. <u>Wood v. Georgia</u>, 450 U.S. 261, 271 (1981). In bringing an ineffective assistance of counsel claim based on an alleged conflict of interest, the petitioner bears "a somewhat lighter burden" in satisfying the <u>Strickland</u> criteria. <u>Cabello v. United States</u>, 188 F.3d 871,

875 (7th Cir. 1999). Where, as here, the trial judge was not put on notice of a potential conflict, the petitioner must demonstrate that his counsel actively represented conflicting interests and that the conflict adversely affected the counsel's performance. Id. (citing Cuyler v. Sullivan, 446 U.S. 335, 348, 100 S. Ct. 1708 (1980) and United States v. Fish, 34 F.3d 488, 492 (7th Cir. 1994)). He need not go further and show that there was a reasonable probability that the outcome would have been different in the absence of a conflict.

In order to succeed on this ineffective assistance claim, therefore, Krilich must demonstrate that his interests and his son's were in conflict. The crimes for which Krilich and Rob Krilich were under investigation were wholly unrelated; neither man could provide information or otherwise directly affect the outcome of the other's case. Indeed, the only nexus between the two cases was the elder Krilich's desire to obtain leniency for his son. In pursuit of this end, Krilich actively sought to link his fate to his son's. For example, Krilich asserts in his habeas petition that he "agreed to cooperate and to provide information to the United States Attorney's Office because he believed that providing such assistance would, in turn, cause the government to offer his son more lenient treatment." See § 2255 Motion at p. 4. The petition goes on to allege that, "[a]s both Steinback and AUSA King were aware, Mr. Krilich's paramount interest in cooperating with the government was to favorably affect the

disposition that would be reached in the prosecution of his son, Rob Krilich." Id.; see also September 12, 1995, Declaration of Jeffrey B. Steinback (stating, in support of one of Krilich's motions for reconsideration, that "Mr. Krilich was highly motivated to resolve [the pending criminal case] in his son's favor through almost any means"). To the extent that Steinback assisted Krilich in seeking leniency for his son, therefore, that assistance was provided in furtherance of Krilich's expressed interests, not contrary to them. Krilich has not cited a single case in which a conflict of interest has been found under these circumstances.

Even if an argument could be made that Steinback's dual representation presented a conflict, Krilich cannot demonstrate that his pretrial representation was adversely affected by that conflict. According to Krilich, Steinback's desire to protect Rob Krilich's interests led him to advise Krilich to sign the proffer agreement without either negotiating a more favorable waiver provision or properly informing his client about the terms of the existing waiver provision. In particular, Krilich argues, Steinback should have advised him that by entering into the proffer agreement, he was foregoing the ability to vigorously cross-examine government witnesses and to present circumstantial evidence of his innocence through defense witnesses. However, as Krilich himself has argued at other points in this litigation, Steinback's advice about the proffer agreement was solidly based on the attorney's then-understanding of the

terms of the agreement. On September 13, 1995, for example, Krilich filed a motion for reconsideration of the trial court's decision to permit introduction of the proffer statements. In support of this motion, Krilich filed a declaration from Steinback in which the attorney attested, under oath, that "during the hundred-plus proffer interviews that [he had] engaged in with the United States Attorney's office for the Northern District of Illinois," he had never understood the waiver provision in the proffer letter "to mean that defense counsel's cross-examination of the Government's witnesses at trial could somehow open the door to introduction of a defendant's statements against him." See Brief in Opposition to the Government's Allegations of Procedural Bar, Exh. 2 at ¶ 6-7. He further stated that "[i]f I knew that this provision of the standard form proffer letter could be used against this defendant in this manner, then I would never have advised Mr. Krilich to enter into such a proffer interview arrangement with the Government." Id., Exh. 2 at ¶ 7. On August 18, 1997, Krilich submitted another affidavit from Steinback in support of his Motion to Reconsider Bond Pending Appeal. In this second affidavit, Steinback reiterated that based on his significant experience negotiating plea agreements with the U.S. Attorney's office, "[i]t never even occurred to me to advise Mr. Krilich as to anything different" than he did regarding the meaning of the waiver provisions of the proffer agreement. See id., Exh. 5 at ¶ 5.

Having affirmatively presented this testimony twice when it suited him, Krilich cannot now argue, in the absence of new factual developments, that an evidentiary hearing is necessary to test the veracity of Steinback's sworn statements. As a result, Krilich cannot establish that he was denied ineffective assistance of counsel as a result of Steinback's simultaneous representation of Krilich and Krilich's son. This holding does leave open the question of whether Steinback's failure to predict the circumstances under which the proffer statements might become admissible was within the bounds of professional competence. However, for the reasons set forth in the following section, that claim, too, is unavailing.

## B. Conditional waiver and admission of proffer statements at trial

Krilich next argues that he was denied the effective assistance of counsel at trial. It is undisputed that Krilich's trial attorneys, Berkson and Samuels, elicited testimony on direct and cross-examination which the trial court, and later the Seventh Circuit, found to have opened the door to the admission of damaging admissions from Krilich's proffer interviews. The question is whether Berkson and Samuels' decision to put on the case that they did was objectively unreasonable.

As stated above, our review of trial counsel's performance is highly deferential. U.S. v. Meyer, 234 F.3d 319, 324-25 (7th Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065 (1984) and Lowery v. Anderson, 225 F.3d

833, 843 (7th Cir. 2000). In assessing counsel's performance, we "evaluate the conduct from counsel's perspective at the time, and indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional conduct." United States v. Ashimi, 932 F.2d 643, 648 (7th Cir. 1991). Applying this standard, we cannot conclude that Krilich was denied the right, guaranteed under the Sixth Amendment to the U.S. Constitution, to effective representation of counsel in a criminal trial.

In United States v. Dortch, 5 F.3d 1056, 1067-69 (7th Cir. 1993), the Seventh Circuit held that "if the defendant elicits or adduces testimony at trial that is 'materially different' from his proffer statements, the government may use his proffer statements to impeach the witness if the defendant has executed a valid waiver." It is clear from the record that Berkson and Samuels were aware of the ruling in Dortch at the time of Krilich's trial. It is also undisputed that they were aware of Krilich's proffer agreement and the requirement that he not "present a position inconsistent with" the proffer. Nevertheless, Berkson and Samuels believed – incorrectly, as it turns out – that Dortch precluded a defendant only from eliciting on direct examination testimony that directly contradicted his proffer statements. Operating on this belief, Berkson and Samuels attempted to put on a defense case through avenues they considered to fall outside the Seventh Circuit's ruling in Dortch – cross-examination and the presentation through

defense witnesses of circumstantial evidence of the defendant's innocence. What we must decide is whether their actions "might be considered sound trial strategy." U.S. v. Pergler, 233 F.3d 1005, 1010 (7th Cir. 2000) (quoting Foster v. Schomig, 223 F.3d 626, 631 (7th Cir. 2000)).

The trial judge thought so. Although he eventually ruled against them, Judge Grady remarked on the record that Berkson and Samuels' strategy was "intelligent" in light of the unsettled state of the law and the near impossible task counsel would have faced in mounting a defense without treading on the territory of the proffer. See Tr. at 2377; see also Tr. at 2365 ("THE COURT: ...the case law maybe hasn't evolved to the point where they are talking about a strictly cross examination type situation."). And while the Seventh Circuit did opine that Berkson and Samuels' interpretation of the proffer agreement "would be an unnatural reading of the language," Krilich, 159 F.3d at 1025, it is evident that Krilich's trial attorneys were not alone in their understanding of the terms of the agreement. According to the aforementioned September 12, 1995 and August 18, 1997 declarations of Jeffrey Steinback, for example, Steinback had come to an identical conclusion about the meaning of the proffer agreement based on 33 years as a criminal defense attorney in the Northern District of Illinois. In the August 18 affidavit in particular, Steinback asserts that he was personally aware of only four prosecutions that proceeded to trial after the

defendant signed a proffer agreement. In the three cases in which the defendant did not take the stand, the proffer statements were not used against him even though the case was close and the defense engaged in vigorous cross-examination that contradicted the proffer. See August 18, 1997 Affidavit of Jeffrey B. Steinback at ¶ 6. In an amicus curiae brief filed in support of Krilich's direct appeal, the Federal Defender Program and Illinois Attorneys for Criminal Justice echoed Steinback's assertion that the trial court's reading of the proffer agreement was inconsistent with the custom and practice in the Northern District of Illinois.[1]

In light of this significant evidence of shared confusion, we cannot conclude that Berkson and Samuels' attempt to put on a vigorous defense while preventing admission of the proffer statements was so far outside the wide range of professional competence as to be constitutionally deficient. As Judge Grady explained, counsel took a gamble which failed to work out as they had hoped. Although we now know, with the benefit of hindsight, that Berkson and Samuels' (and Steinback's) interpretation of the "otherwise present a position inconsistent" language was incorrect, we are required under Strickland to evaluate the challenged conduct from counsel's perspective at the time it occurred. Ashimi, 932 F.2d at 648. Prior to and at the time

[1]Krilich even contends in support of the Fifth Amendment claims in his petition that *AUSA King* advanced this same interpretation of the waiver provisions of the proffer agreement.

- 19 -

of Krilich's trial, counsel's actions, taken against a backdrop of widespread confusion about the breadth of the conditional waiver contained in the Government's standard proffer letter, were simply not objectively unreasonable. Accordingly, we reject the claim that Krilich's trial attorneys' performance was constitutionally deficient.

In any event, Krilich cannot show the prejudice necessary for him to recover on his ineffective assistance of counsel claims. In its case-in-chief, the Government presented eyewitness testimony from Krilich's bagman and others regarding bribes Krilich paid to Oakbrook Terrace officials and false invoices he submitted for the municipal bond proceeds. With respect to the hole-in-one contest in particular, the Government's witnesses testified that Krilich had sent the spotter away from the tee before the mayor's son arrived there, had bent over the prize hole shortly before the mayor's son was announced to be the winner, and had falsely listed two witnesses to the winner's staged hole-in-one. In addition to this testimony, the Government presented documentary evidence which showed that the proceeds of the bond funds had been used by Krilich to purchase a car and make a payment on his yacht. In light of this significant evidence of Krilich's guilt, Krilich cannot establish "a probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 446 U.S. at 694.

### III. Summary

In our view, Krilich has failed to allege facts which, if proven, would entitle him to relief under the Fifth or Sixth Amendments to the United States Constitution. Because the record conclusively demonstrates that Krilich's claims must fail, Krilich is not entitled to an evidentiary hearing. See Stoia v. United States, 22 F.3d 766, 768 (7th Cir. 1994). We therefore deny the § 2255 motion, in its entirety, on the record before the Court at this time.

### CONCLUSION

For the foregoing reasons, Robert Krilich's § 2255 motion to vacate, set aside, or correct his sentence is denied.

Charles P. Kocoras
United States District Judge

Dated: _____ April 5, 2001 _____